## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Petition of TIM FUHR Pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from DEUTSCHE BANK AG, for use in a Foreign Tribunal and Proceeding | Civil Docket No.: 1:13-Cv-06753-TPG |

### DEUTSCHE BANK AG'S OPPOSITION TO TIM FUHR'S PETITION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 TO AID IN FOREIGN PROCEEDING

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION .........................................................................................................1

FACTUAL BACKGROUND .........................................................................................2

    A.    Fuhr And His Associates Have Asserted Several Meritless Litigations In
The U.S. ............................................................................................................2

    B.    The German Proceeding Was Filed Against Fuhr Shortly Before The U.S.
Litigations Were Dismissed. ...........................................................................4

    C.    Fuhr's Section 1782 Application Was Denied In Florida As To Deutsche
Bank AG. ..........................................................................................................6

    D.    The German Proceeding Will Likely Be Concluded Before This Petition Is
Fully Briefed. ...................................................................................................7

    E.    The Majority Of The Discovery Sought By Fuhr Is Not Located At
Deutsche Bank AG, And All Of It Is Located Abroad. ...................................8

ARGUMENT ...............................................................................................................12

I.    THE STANDARDS GOVERNING SECTION 1782. .......................................12

II.    THE PETITION SHOULD BE DENIED BECAUSE A WITNESS CANNOT BE
COMPELLED TO PRODUCE DOCUMENTS NOT IN ITS POSSESSION OR
THAT ARE LOCATED OUTSIDE OF THE U.S. ............................................13

    A.    The Swiss Account Documents Are Not In Deutsche Bank AG's
Possession, Custody, Or Control. ..................................................................13

    B.    None Of The Discovery Sought By Fuhr Is Located In The U.S. ..................15

III.    THE PETITION SHOULD BE DENIED BECAUSE FUHR IS SEEKING TO
CIRCUMVENT SWISS LAW. .........................................................................18

IV.    THE PETITION SHOULD BE DENIED BECAUSE FUHR IS NOT SEEKING
THE DISCOVERY "FOR USE" IN THE GERMAN PROCEEDING. ...........20

V.    THE PERSON(S) FROM WHOM THE TESTIMONY IS SOUGHT CANNOT
BE FOUND IN THIS DISTRICT ....................................................................22

CONCLUSION ...........................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*AHVRAM v. Bank Austria Creditanstalt AG*,
   No. 04-cv-3600, 2005 WL 2001888 (S.D.N.Y. Aug. 19, 2005)................................................3

*Allied Ins. & Reinsurance Co. v. R. Esmerian, Inc. (In re Euromepa, S.A.)*,
   154 F.3d 24 (2d Cir. 1998).....................................................................................................20

*Aventis Pharma v. Wyeth*,
   No. M-19-70, 2009 WL 3754191 (S.D.N.Y. Nov. 9, 2009)...................................................20

*Bank of New York v. Meridien Biao Bank Tanzania Ltd.*,
   171 F.R.D. 135 (S.D.N.Y. 1997) .....................................................................................14, 15

*Chase Manhattan Corp. v. Sarrio S.A. (In re Sarrio S.A.)*,
   119 F.3d 143 (2d Cir. 1997)......................................................................................17, 18, 22

*Edelman v. Taittinger*,
   295 F.3d 171 (2d Cir. 2002)...................................................................................................22

*Fleischmann v. McDonald's Corp*,
   466 F. Supp. 2d 1020 (N.D. Ill. 2006) ..................................................................................14

*Four Pillars Enters. Co. v. Avery Dennison Corp.*,
   308 F.3d 1075 (9th Cir. 2002) ..............................................................................................16

*Hunter Douglas, Inc. v. Comfortex Corp.*,
   No. CIV. A. M8-85 (WHP), 1999 WL 14007 (S.D.N.Y. Jan. 11, 1999) ...............................14

*In the Matter of Edward D. Fagan*,
   972 A.2d 385 (N.J. 2009)........................................................................................................3

*In re Fagan*,
   6 A.3d 865 (D.C. 2010) ...........................................................................................................3

*In re Fagan*,
   869 N.Y.S.2d 417 (App. Div. 1st Dep't 2008) .......................................................................3

*In re Fagan*,
   No. 1558 DD No. 3 (Pa. 2010), *available at*
   http://www.padisciplinaryboard.org/discipline_reporter_record.php?id=666..........................3

*In re Godfrey*,
   526 F. Supp. 2d 417 (S.D.N.Y. 2007)........................................................................12, 13, 15

*In re Gushlak*,
    No. 11-MC-218, 2011 WL 3651268 (E.D.N.Y. Aug. 17, 2010)...........................................13

*In re Imanagement Servcs. Ltd.*,
    No. Misc. 05-89 (FB), 2005 WL 1959702 (E.D.N.Y. Aug. 15, 2005)............................14, 20

*In re Microsoft Corp.*,
    428 F. Supp. 2d 188 (S.D.N.Y. 2006)..............................................................................16, 19

*In re Nieri*,
    No. Civ. A. M12-329, 2000 WL 60214 (S.D.N.Y. Jan. 24, 2000).........................................16

*In re Sarrio S.A.*,
    No. 9-372, 1995 WL 598988 (S.D.N.Y. Oct. 11, 1995)......................................16, 17, 18, 22

*In re Ski Train Fire in Kaprun Austria on Nov. 11, 2000*,
    MDL No. 1428 (SAS), 2007 WL 2398697 (S.D.N.Y. Aug. 16, 2007) ...................................3

*In re Ski Train of Nov. 11, 2000 Fire in Kaprun Austria*,
    MDL No. 1428 (SAS), 2006 WL 1328259 (S.D.N.Y. May 16, 2006)...................................14

*In re Veiga*,
    746 F. Supp. 2d 8 (D.D.C. 2010) .........................................................................................16

*Intel Corp. v. Advanced Micro Devices*,
    542 U.S. 241 (2004).............................................................................................12, 13, 18

*Kestrel Coal Pty. v. Joy Global Inc.*,
    362 F.3d 401 (7th Cir. 2004) ............................................................................................13, 14

*Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*,
    384 F. Supp. 2d 45 (D.D.C. 2005) ....................................................................................16, 14

*Searock v. Stripling*,
    736 F.2d 650 (11th Cir. 1984) ...............................................................................................14

*SEC v. Stanford Int'l Bank, Ltd.*,
    776 F. Supp. 2d 323 (N.D. Tex. 2011) ..................................................................................19

**STATUTES**

28 U.S.C. § 1782............................................................................................................... passim

**RULES**

Fed. R. Civ. P. 34.........................................................................................................................14

Fed. R. Civ. P. 45(a)(1)(A)(iii) ...................................................................................................14

**OTHER AUTHORITIES**

Hans Smit, *American Assistance to Litigation in Foreign International Tribunals: § 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1, 10 (1998)....................17

**<u>INTRODUCTION</u>**

Tim Fuhr's Petition is the latest in a series of meritless filings in multiple U.S. courts by a group of individuals and entities that claim to have recently purchased interests in the estate of a German family (whose last heir died 23 years ago) to file U.S. lawsuits.  This group, the so-called "Wertheim heirs"—none of whom even claims to be an actual member or ancestor of the Wertheim family—includes Petitioner Fuhr.  To the best of Deutsche Bank AG's knowledge, each of these lawsuits, including a recent one in the Central District of California in which Fuhr unsuccessfully attempted to intervene, has been dismissed before discovery.  It is against this backdrop that this Court should view the Petition, which is merely an improper attempt to procure documents that Fuhr and his collaborators were unable to obtain through their prior frivolous U.S. lawsuits.

The Petition should be denied on several grounds.

*First*, the majority of the discovery that Fuhr seeks—if the documents even exist—is not located at Deutsche Bank AG.  Fuhr himself alleges that it is located at Deutsche Bank AG's subsidiary in Switzerland.  And *all* of the discovery sought by Fuhr is located abroad, and is thus outside of Section 1782's geographical reach.

*Second*, by seeking the documents in this District, Fuhr is trying to circumvent Switzerland's strict banking secrecy laws that would prevent disclosure of the information.

*Third*, Fuhr has not shown that the discovery that he is seeking could even be of use in the proceeding brought against him in Germany.  That action likely will conclude before this Petition is even fully briefed.  Moreover, the discovery sought is irrelevant to the German proceeding.  The litigation history of the so-called Wertheim heirs suggests that Fuhr is seeking the discovery for use in future meritless U.S. proceedings.

1

*Finally*, there is no representative at Deutsche Bank AG in this District that has any knowledge of the Swiss bank account at issue, and thus Fuhr's request for testimony should also be denied.

## FACTUAL BACKGROUND

### A.    Fuhr And His Associates Have Asserted Several Meritless Litigations In The U.S.

The discovery that the Petition seeks, purportedly for the *defense* of a *foreign* action, is the same discovery previously sought for the *prosecution* of several unsuccessful *U.S.* actions (one of which Fuhr sought to join).  The history of these meritless filings by Fuhr and his associates provides important background for this Petition, which is a transparent attempt to obtain evidence to revive Fuhr's failed U.S. litigation strategy.

The prior actions were brought on behalf of the so-called "Wertheim heirs," who sometimes call themselves the "Interest Association of Wertheim Heirs."  This "association" had its genesis in June 2012, when Fuhr—who never alleges that he is even related to the Wertheims (including the purported "last heir" of the Wertheim family, Dr. Ambrosius Wolfgang Bäuml)— allegedly obtained 100% of the inheritance rights to the Bäuml estate via notarial deed.  (*See* Petition, Ex. 2B.)

Fuhr then parceled out sub-portions of his alleged rights to others for the purpose of filing and joining U.S. lawsuits.  On September 3, 2012, Fuhr assigned 5% of the alleged rights to Edward D. Fagan.  (*See* Ex. 1 to the declaration of Nicole Vasquez Schmitt submitted herewith (the "Schmitt Decl.") at PE 000043.[1])  The assignment stated that it was "made for the purpose of asserting inheritance claims."  (*Id.* at PE 000044.)  Fagan, a serial filer of frivolous

---

[1]    The documents attached as Exhibit 1 to the Schmitt Decl. were produced to Deutsche Bank AG by Fagan.  Deutsche Bank AG is not able to attest to the validity of the documents and does not attest to the validity of the translations.

2

lawsuits, is a former attorney who has been disbarred in several states (including New York) for, among other things, misappropriating client funds, fraud, and misrepresentations; he has also been sanctioned by several courts for frivolous litigation conduct.[2]

On September 5, 2012, only two days after Fuhr assigned the alleged rights to Fagan, Fagan filed a lawsuit on behalf of himself and the Interest Association of Wertheim Heirs in the Central District of California against Deutsche Bank AG, Deutsche Bank (Suisse) SA ("DB Suisse"), Deutsche Bank S.A.E., and Hans Hoffmann, the deceased Honorary Consul General of Germany to Spain—*Fagan v. Deutsche Bank AG*, Case No. CV 12-7582-DSF-MANx (C.D. Cal.) (the "Fagan California Action").

The Fagan California Action alleged that in the 1980s to early 1990s the defendant banks assisted Hoffmann and Luis Marimón Garnier ("Marimón")—a former Deutsche Bank officer and the plaintiff in the German defamation proceeding filed against Fuhr (the "German Proceeding")—in "looting" certain assets belonging to Dr. Bäuml, who passed away in 1990.  (*See* ECF No. 1 in Fagan California Action.)  Fagan sought in excess of $1 billion in damages on behalf of the Wertheim heirs.  (*Id.*)

Also on September 5, 2012, Fagan filed an action in the District Court for the

---

[2]    *See In re Fagan*, 869 N.Y.S.2d 417, 421 (App. Div. 1st Dep't 2008) (Fagan disbarred in New York for making deliberate misrepresentations to the court, for repeatedly violating court orders, and for failing to pay a judgment sanctioning him for unethical conduct); *In the Matter of Edward D. Fagan*, 972 A.2d 385, 385 (N.J. 2009) (Fagan disbarred in New Jersey for knowing misappropriation of client funds, and conduct involving dishonesty, fraud, deceit, or misrepresentation); *In re Fagan*, No. 1558 DD No. 3 (Pa.  2010), *available at* http://www.padisciplinaryboard.org/discipline_reporter_record.php?id=666 (Fagan disbarred in Pennsylvania); *In re Fagan*, 6 A.3d 865, 865 (D.C. 2010) (Fagan disbarred in the District of Columbia); *In re Ski Train Fire in Kaprun Austria on Nov. 11, 2000*, MDL No. 1428 (SAS), 2007 WL 2398697, at *7, (S.D.N.Y. Aug. 16, 2007) (Fagan disqualified and sanctioned for making "false representations" and exhibiting behavior that "suggested utter disregard for the court" and "wasted judicial resources"); *AHVRAM v. Bank Austria Creditanstalt AG*, No. 04-cv-3600, 2005 WL 2001888, at *5 (S.D.N.Y. Aug. 19, 2005) (court chastised Fagan for "flagrant misrepresentations in the Amended Complaint," dismissed his suit, and sanctioned him for bad faith).

District of Columbia alleging the same wrongdoing against certain Credit Suisse entities—*Fagan v. Credit Suisse AG*, Case No. 12-cv-01468-RBW (D.D.C.) (the "Fagan D.C. Action", and together with the Fagan California Action, the "Fagan Actions").

On the same day that Fagan filed the Fagan Actions (September 5, 2012), Thomas Gerdes—another representative of the Interest Association of Wertheim Heirs—filed a summons with notice as plaintiff against certain Deutsche Bank and Credit Suisse entities in the Supreme Court of the State of New York.  *See Gerdes v. Deutsche Bank AG*, Index No. 103706/12 (N.Y. Sup. Ct.).  That summons, which alleged similar causes of actions as the Fagan Actions and also sought $1 billion in damages, was never served on any Deutsche Bank entity and no complaint was ever filed.  Gerdes now serves as Fuhr's counsel in the German Proceeding.

**B.      The German Proceeding Was Filed Against Fuhr Shortly Before The U.S. Litigations Were Dismissed.**

As explained in the accompanying declaration of Dr. Walter Scheuerl (the "Scheuerl Decl."), who is counsel to Marimón in the German Proceeding, Marimón sued Fuhr in Germany on September 10, 2012 for defamation related to statements Fuhr made in letters to Deutsche Bank AG regarding Marimón's alleged role in the "looting" of Dr. Bäuml's assets. (Scheuerl Decl. ¶¶ 1, 3.)  Contrary to Fuhr's claims (*see* Fuhr Decl.[3] ¶ 5), Marimón did not sue Fuhr for €500,000 in damages.  (Scheuerl Decl. ¶ 4.)  Rather, Marimón seeks an order, *inter alia*, that Fuhr shall be prohibited from further defamation on administrative pain of a fine of €250,000 for each infringement or, in the alternative, a term of imprisonment not exceeding six months.  (*Id.*)[4]

---

[3]  The "Fuhr Decl." is the declaration of Tim Fuhr dated September 19, 2013, attached as Exhibit 5 to the Petition.

[4]  The reference to the "amount in dispute" of "up to" €500,000 in Exhibit 4B to the Petition relates only to the estimated value of the claim for ceasing and desisting future defamation, court costs, and legal fees.  (*Id.*)

On November 16, 2012, the Fagan D.C. Action was dismissed.  (*See* ECF No. 13 in Fagan D.C. Action.)

On November 20, 2012, Fuhr assigned 37.5% of the alleged rights to the Bäuml estate to an entity called "Friends of LBS, Inc."  (*See* ECF No. 52 in Fagan California Action, which is a motion filed by Fuhr and the Friends of LBS to intervene in that case (the "Intervention Motion") (attached as Ex. 2 to the Schmitt Decl.), at Enclosure 3 § 2).  Like the assignment to Fagan, the assignment to Friends of LBS stated that it was "made for the purpose of asserting inheritance claims."  (*Id.* § 9.)  Additionally, with regard to then-pending lawsuits in U.S. courts, the assignment stated that Friends of LBS agreed to inform the courts "that U.S. legal counsel has been instructed to either join the two existing legal actions on the Plaintiff's side or to file separate claims in the same matter in order to join these newly filed claims with the existing claims in one set of proceedings."  (*Id.* § 4.)  In a telling display of the opportunism that underlies this strategy of purchasing inheritance rights, Fuhr noted in both the Friends of LBS and Fagan assignments that "[t]he inheritance claims assigned explicitly do not include the film and book rights."  (*Id.* § 2; Schmitt Decl. Ex. 1 at PE00043.)

On December 14, 2012, Fuhr filed the Intervention Motion in the Fagan California Action *pro se* on behalf of himself and Friends of LBS.  Fuhr explained in the Intervention Motion that he was assembling a U.S. legal team and experts to pursue his supposed inheritance rights.  (Intervention Motion at 12-13.)

The Intervention Motion was denied on January 8, 2013.  The Central District of California Court noted that it saw "no reason to allow Fuhr to intervene in . . . the already questionable proceedings."  (*See* ECF No. 56 in Fagan California Action (attached as Ex. 3 to the Schmitt Decl.).)  The Fagan California Action was dismissed on January 24, 2013.  (*See* ECF

5

Nos. 58, 59 in Fagan California Action.)

### C. Fuhr's Section 1782 Application Was Denied In Florida As To Deutsche Bank AG.

On May 3, 2013, Fuhr filed an application in the Southern District of Florida against Deutsche Bank AG and Credit Suisse AG for judicial assistance pursuant to 28 U.S.C. § 1782 to obtain the same documents that he seeks through this Petition.  (*Compare* Petition, Ex. 7 ¶ 36 *with* Petition ¶ 56.)  On June 14, 2013, Deutsche Bank AG filed an opposition to the application on the grounds that (i) Deutsche Bank AG neither resides nor can be found in the Southern District of Florida; (ii) Fuhr did not seek the evidence "for use" in the German Proceeding; (iii) any responsive documents would be located outside of the U.S. and would likely be protected by foreign privileges; and (iv) the fact that Fuhr appeared to have ulterior motives in filing the application weighed against granting the application.  (Petition, Ex. 8.) Credit Suisse AG did not file an opposition to the application.

On July 25, 2013, United States Magistrate Judge Edwin G. Torres issued a report and recommendation ("R&R") that the application be denied as to Deutsche Bank AG on jurisdictional grounds.  (Petition, Ex. 9.)  Judge Torres did not address Deutsche Bank AG's other arguments for dismissal and made no findings as to Credit Suisse AG.  (*Id.*)

On August 1, 2013, Fuhr filed an objection to the R&R.  (Petition, Ex. 10.)  Fuhr did not object to the R&R as it applied to Deutsche Bank AG, and instead informed the Court that he would pursue the application in other jurisdictions.  (*Id.* at 1.)  Credit Suisse AG did not file an objection to the R&R.

On August 29, 2013, Judge Robin S. Rosenbaum adopted the R&R as to Deutsche Bank AG, and denied the application.  (Petition, Ex. 11.)  Judge Rosenbaum granted Fuhr's application as to Credit Suisse AG, but only after noting that none of the discretionary factors

weighed against denying the application "*on the record as it currently exists before the Court*."

(*Id.* at 3-5 (emphasis added).)[5]

Credit Suisse was subsequently served with a subpoena by Fuhr and it filed a

motion to quash that subpoena on October 3, 2013 (attached as Exhibit 4 to the Schmitt Decl.).

That motion raises many of the same challenges to Fuhr's requests that are addressed herein.

**D.   The German Proceeding Will Likely Be Concluded Before This Petition Is Fully Briefed.**

Marimón has submitted evidence in the German Proceeding that he never

controlled or managed the estate of Dr. Bäuml and that there is no relationship between the

Swiss bank account referenced in the Petition, Bäuml, and/or Marimón.  (Scheuerl Decl. ¶ 5.)[6]

Fuhr and Gerdes claim that, at an August 29, 2013 hearing in the German

Proceeding, Marimón's counsel represented that he and his clients had been in "constant"

communication with Deutsche Bank AG's lawyers in New York and that they had exchanged

information and documents intended to aid Marimón in his prosecution of the proceeding.  (Fuhr

Decl. ¶¶ 11(b), 48-51; Gerdes Letter at 2; *see also* Petition ¶¶ 21-22.)  As explained by Dr.

Scheuerl in his declaration, this is flatly incorrect.  (Scheuerl Decl. ¶¶ 6-11.)

Fuhr stated at the hearing that he and his associates had filed certain proceedings

in the U.S. regarding the looting of the Bäuml assets.  (*Id.* ¶ 11.)  Dr. Scheuerl objected to that

---

[5]   Fuhr argues that this Court should grant the Petition based on the same reasoning as in Judge Rosenbaum's order.  (Petition ¶ 33.)  But that order, because it affirmed the conclusion of the R&R that the petition be dismissed as to Deutsche Bank AG on jurisdictional grounds, did not address Deutsche Bank AG's other arguments for denial.  The order discussed the petition only as it applied to Credit Suisse AG, which had not filed an opposition.  The court expressly stated that it was making its decision only based on the "record as it stands."  (Petition, Ex. 11, at 4-5.)  The court also noted that the Federal Rules of Civil Procedure provided a means for Credit Suisse AG to raise its arguments at a later time (*id.* at 4), which Credit Suisse AG has done by filing a motion to quash.

[6]   The Swiss bank account document attached as Exhibit 1 to the Petition support this; there is no indication that the account is in any way related to Dr. Bäuml or Marimón, as neither name appears anywhere on the document.

allegation and explained that he learned from counsel to Deutsche Bank AG in New York that

the actions filed in the U.S. by Fuhr and his associates (including the Florida application seeking

documents from Deutsche Bank AG to aid in the German Proceeding) had been denied or

dismissed.  (*Id.*)  Dr. Scheuerl did *not* state that he had exchanged documents with Deutsche

Bank AG's New York counsel intended to aid Marimón in his prosecution of the German

Proceeding.  (*Id.* ¶ 9.)  As Dr. Scheuerl further explains in his declaration, the only documents he

has ever received from Deutsche Bank AG's counsel in New York are copies of Fuhr's Section

1782 applications.  (*Id.* ¶ 10.)  Additionally, Dr. Scheuerl has never discussed the German

Proceeding with Deutsche Bank AG's lawyers in New York, except to point out incorrect

allegations in Fuhr's Section 1782 filings.  (*Id.* ¶ 8.)

Fuhr and Gerdes make a further misrepresentation to this Court when they claim

that there is another court appearance in the German Proceeding scheduled for October 17, 2013.

(Fuhr Decl. ¶ 6; Gerdes Letter at 2.)  Rather, the German Judge announced her intention to issue

a decision on October 17, 2013.  (*Id.* ¶ 13.)  While there is a chance that may be an interim

decision, it is likely that the Judge will issue a final decision on that day.  (*Id.*)

Which brings us to the present Petition.  This backdrop of meritless filings and

misrepresentations by Fuhr and his associates demonstrates that Fuhr does not need the

documents for use in the German Proceeding, which might be concluded before this Court

renders its decision.  Rather, Fuhr improperly seeks to use this Petition to obtain documents and

testimony from Deutsche Bank AG that he and his cohorts were unable to obtain in their other

frivolous actions.

    **E.**      **The Majority Of The Discovery Sought By Fuhr Is Not Located At Deutsche
Bank AG, And All Of It Is Located Abroad.**

The discovery that Fuhr seeks in this Petition all relates to a bank account (the

"Swiss Account") that—according to the evidence submitted by Fuhr—was located at DB Suisse in the 1990s.[7]  (Petition ¶¶ 13, 15, 56, 60 & Ex. 1B ("Please close the above mentioned accounts and transfer the final balances to the *Deutsche Bank (Suisse) SA, Geneva Switzerland* for the credit of account no:  132012 INT.") (emphasis added); *see also* Fuhr Decl. ¶¶ 43, 46, 49, 53.)

   Fuhr seeks the following discovery related to the Swiss Account:

1.  Opening and closing statements, transfers, and signature cards related to the Swiss Account (Petition ¶ 56(a)-(h));

2.  Correspondence from January 2011 to the present related to the Swiss Account between Deutsche Bank AG on the one hand and (i) Credit Suisse AG; (ii) Marimón; or (iii) third parties on the other hand (*id.* ¶ 56(i)); and

3.  Testimony from the representative of Deutsche Bank AG most knowledgeable about the Swiss Account (Fuhr Decl. ¶ 53).

   *First*, regarding the Swiss Account documents, as noted above, Fuhr's own evidence shows that the Swiss Account was located at DB Suisse, not at Deutsche Bank AG. DB Suisse is not named in the Petition.  Nor could it be.  DB Suisse is not located in this District; it has no offices or property here and does no business here.  (*See* Declaration of Charlie J. Gambino (the "Gambino Decl."), submitted herewith, ¶ 5.)  In fact, DB Suisse does not do business anywhere in the U.S.  (*Id.* ¶ 6.)

   Rather than seek the documents through proper channels in Switzerland, Fuhr baldly asserts that Deutsche Bank AG's New York branch can access the documents related to the Swiss Account from its "hard copy files" or by a "push of the button" from computers in its

---

[7] Deutsche Bank AG does not attest to the validity of this evidence.  As explained herein, Deutsche Bank AG cannot access records related to this alleged account.

"legal department located within this District." (Fuhr Decl. ¶ 13.)[8] Fuhr declares that "Deutsche Bank has already confirmed" this to him, but he never identifies who at Deutsche Bank gave him this information or when that unidentified person "confirmed" it. (*Id.* ¶ 11(a).)

It appears that Fuhr is mischaracterizing a July 10, 2012 letter from Deutsche Bank AG to Fuhr, which is attached as Exhibit 3 to the Petition. That letter is a response from Deutsche Bank AG to Fuhr's request for any documents in Deutsche Bank AG's possession related to bank accounts in the name of Dr. Bäuml. (Petition, Ex. 3B.) Deutsche Bank AG informed Fuhr that it found no reference to Dr. Bäuml in its searches across databases available in Germany, but stated that "in order to expand out researches . . . we shall require details of the branch of the Bank at that time carrying the account" of Dr. Bäuml. (*Id.*)[9] Fuhr tries to sneak one past the Court by claiming that Deutsche Bank AG expressed in the letter that "*it could conduct a further search for documents, including at its branches/subsidiaries*." (Fuhr Decl. ¶ 44 (emphasis added).) Indeed, a "branch" and a "subsidiary" are two very different things, and Fuhr makes up out of whole cloth that Deutsche Bank AG has search capabilities across its subsidiaries such as DB Suisse.[10]

If documents relating to the Swiss Account are located at DB Suisse, Deutsche

---

[8] Tellingly, these assertions are accompanied by the words "upon information and belief" in the Petition (¶ 48). As explained in the Gambino Decl. (¶¶ 15, 19), Deutsche Bank AG's New York branch cannot access the discovery Fuhr is seeking in its hard copy files or by a "push of the button."

[9] The translation provided by Fuhr is not certified and Deutsche Bank AG does not attest to the validity of this translation. But even if the translation is accurate, Fuhr's arguments based on the letter have no merit for the reasons discussed above.

[10] DB Suisse is *not* a branch of Deutsche Bank AG. (Gambino Decl. ¶ 7.) Contrary to Fuhr's contention (Petition ¶ 55), Deutsche Bank AG does not have a branch in Geneva. (Gambino Decl. ¶ 8.) Rather, DB Suisse is a wholly-owned subsidiary of, and a separate legal entity from, Deutsche Bank AG. (*Id.* ¶ 9.) Deutsche Bank AG does not unilaterally "control" its subsidiaries such as DB Suisse. (*Id.* ¶ 10.) DB Suisse has regular board meetings separate from Deutsche Bank AG, and its board has its own decision making power. (*Id.* ¶ 11.) DB Suisse observes separate corporate formalities from Deutsche Bank AG. (*Id.* ¶ 12.) And the assets of DB Suisse are not comingled with the assets of Deutsche Bank AG. (*Id.* ¶ 13.)

Bank AG would not be able to access those documents with a "push of the button," as Fuhr

claims.  (Gambino Decl. ¶ 15.)  This is especially true in Switzerland because of strict banking

secrecy laws that prevent bank employees from divulging information about Swiss accounts to

anyone—even to a parent organization— unless they are authorized to do so under Swiss law or

the person whose privacy is protected by the law gives a fully informed waiver of such

confidentiality.  (*Id.* ¶ 16; *see also infra* at Argument, Section III.)  And even in the case of a

waiver, certain criminal statutes cannot be waived because they protect Swiss sovereignty, and

not individuals.  (Gambino Decl. ¶ 16.)  The usual way of obtaining Swiss evidence for use in a

foreign proceeding would be through channels of international legal assistance in accordance

with Swiss law.  (*Id.*)

Deutsche Bank AG's New York branch also does not have any hard copy files

related to the Swiss Account.  (*Id.* ¶ 17.)

Moreover, even if Fuhr had submitted evidence that the Swiss Account

documents are located at a branch of Deutsche Bank AG, they would be located abroad, as Fuhr

has conceded that any "relevant documents and information" would be "located in Germany,

Spain, or Switzerland."  (Petition ¶ 61; *see also* Intervention Motion at 5 (alleging that the

wrongdoing occurred exclusively outside of the U.S.).)  And, as a practical matter, these

documents still would not necessarily be accessible by Deutsche Bank AG's branches in the U.S.

(Gambino Decl. ¶ 18.)  The bank does not have a worldwide computer system from which

employees at one branch can access documents at another branch.  (*Id.* ¶ 19.)  Such a function

would conflict with applicable banking secrecy laws and local data protection rules.  (*Id.*)

*Second*, regarding the correspondence sought by Fuhr, as explained above,

Marimón and his counsel have not exchanged documents or information with Deutsche Bank

11

AG's New York counsel intended to aid in Marimón prosecution of the German Proceeding.

Regarding Deutsche Bank AG's correspondence with Credit Suisse AG and third parties, Fuhr

has not provided one piece of evidence that such correspondence even occurred.  Even if it did, it

is clear from the Petition that Deutsche Bank AG's legal department in Germany was handling

the communications regarding Fuhr's frivolous claims.  (*See* Petition, Ex. 3.)

   *Finally*, regarding Fuhr's request for testimony from the representative of

Deutsche Bank AG most knowledgeable about the Swiss Account (Fuhr Decl. ¶ 53)—there is no

one at Deutsche Bank AG in New York with any knowledge of the Swiss Account (other than

what they may have read in Fuhr's filings).  (Gambino Decl. ¶ 20.)  The only people with

knowledge of this purported account would likely be located in Switzerland, and Fuhr should be

required to pursue their testimony through the Hague Convention or other applicable laws.

   In sum, all of the discovery requested by Fuhr—if it even exists—is located

abroad.  And by Fuhr's own admissions, the bulk of documents he seeks are housed at DB

Suisse, not Deutsche Bank AG.

## ARGUMENT

## I. THE STANDARDS GOVERNING SECTION 1782.

   Under 28 U.S.C. § 1782, a District Court may—but need not—order a person to

give testimony or produce documents only if all of the following statutory requirements are met:

(i) the person from whom discovery is sought must "reside" or be "found" in the district; (ii) the

discovery must be for use in a proceeding in a foreign tribunal; and (iii) the applicant must be an

"interested person."  *See Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 246-47 (2004)

(listing factors); *In re Godfrey*, 526 F. Supp. 2d 417, 418 (S.D.N.Y. 2007) (describing factors as

the "three threshold requirements for compelling discovery under § 1782").

Even if the Court were to find that the Petition meets all of the statutory requirements, that is not the end of the inquiry.  Rather, the questions of whether, and to what extent, to honor a request for assistance pursuant to Section 1782 rests within the sound discretion of the District Court.  *In re Godfrey*, 526 F. Supp. 2d at 418-19.  Courts are "not required to grant a § 1782(a) discovery Petition" even when they "ha[ve] the authority to do so." *Intel Corp.*, 542 U.S. at 264.  Moreover, a court should exercise its discretion only for "a good reason."  *Kestrel Coal Pty. v. Joy Global Inc.*, 362 F.3d 401, 406 (7th Cir. 2004) (Easterbrook, *J.*).

If a court determines that the statutory requirements are met and that the discretionary factors weigh in favor of granting the Section 1782 application, the court may still quash the requests if the subpoena would fail to comply with Rules 26 and 45 of the Federal Rules of Civil Procedure.  *See In re Gushlak*, No. 11-MC-218, 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2010) ("Section 1782(a) mandates that discovery under the statute be produced 'in accordance with the Federal Rules of Civil Procedure.'").

Based on these principles, the Petition should be denied.[11]

## II.   THE PETITION SHOULD BE DENIED BECAUSE A WITNESS CANNOT BE COMPELLED TO PRODUCE DOCUMENTS NOT IN ITS POSSESSION OR THAT ARE LOCATED OUTSIDE OF THE U.S.

### A.   The Swiss Account Documents Are Not In Deutsche Bank AG's Possession, Custody, Or Control.

As explained in detail above, the majority of the documents sought by Fuhr (the Swiss Account documents) would be located at DB Suisse, a fact established by Fuhr's own evidence.  (*See* Petition, Ex. 1.)  These documents are therefore not in the "possession, custody,

---

[11]   If the Petition is granted, Deutsche Bank AG reserves the right to raise all applicable arguments under the Federal Rules of Civil Procedure in opposition to any subpoena subsequently issued.

or control" of Deutsche Bank AG, as required by Fed. R. Civ. P. 45(a)(1)(A)(iii).

Fuhr cites cases for the proposition that if Deutsche Bank AG "controls" DB Suisse (*i.e.*, if Deutsche Bank AG has the access and ability to obtain the documents from DB Suisse), the Petition should be granted even though Deutsche Bank AG does not have the documents in its own files.  (*See* cases cited at Petition ¶¶ 64-69.)  These cases are inapposite because they are outside of the Section 1782 context.[12]  Courts have held that a parent entity named as a respondent in a 1782 petition need not produce documents from its subsidiaries in the absence of a finding that the party seeking the documents has demonstrated (i) the requirements for piercing the corporate veil; (ii) that corporate forms have not been adhered to; or (iii) that the parent company "has broken a unitary enterprise into slivers in order to hide assets or bamboozle creditors."  *Kestrel Coal Pty.*, 362 F.3d at 404-05 ("Section 1782(a) itself neither instructs, nor permits, courts to disregard the distinction between the corporation that owns a set of documents, and a different corporation that owns stock in the first entity."); *see also Norex*, 384 F. Supp. 2d at 56-57 (same).  Fuhr makes no such demonstration here.

Moreover, as one of the cases cited by Fuhr points out, "[i]n the face of a denial by a party that it has possession, custody or control of documents, the discovering party must

---

[12]  *See Searock v. Stripling*, 736 F.2d 650 (11th Cir. 1984) (Fuhr incorrectly cites this as a Second Circuit case, and, in any event, the court discusses the "control" test under Fed. R. Civ. P. 34, which applies to parties in litigation); *Bank of New York v. Meridien Biao Bank Tanzania Ltd.*, 171 F.R.D. 135, 147 (S.D.N.Y. 1997) (discussing test under Rule 34); *In re Ski Train of Nov. 11, 2000 Fire in Kaprun Austria*, MDL No. 1428 (SAS), 2006 WL 1328259, at *5, (S.D.N.Y. May 16, 2006) (same); *Hunter Douglas, Inc. v. Comfortex Corp.*, No. CIV. A. M8-85 (WHP), 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999) (discussing test under Fed. R. Civ. P. 45, but outside of the Section 1782 context).  The only two cases Fuhr cites for this proposition that are in the § 1782 context (*see* Petition ¶ 68) *do not even discuss the test at all.  See In re Imanagement Servcs. Ltd.*, No. Misc. 05-89 (FB), 2005 WL 1959702 (E.D.N.Y. Aug. 15, 2005); *Fleischmann v. McDonald's Corp*, 466 F. Supp. 2d 1020, 1031 (N.D. Ill. 2006).  Moreover, in *Fleischmann*, the court held that a parent corporation could not be considered a party to the underlying foreign proceeding just because its subsidiary was a party, a holding that supports the conclusion that Deutsche Bank AG and DB Suisse should be treated as separate entities here.  *See Fleischmann*, 466 F. Supp. 2d at 1031.

14

make an adequate showing to overcome this assertion." *Bank of New York v. Meridien Biao Bank Tanzania Ltd.*, 171 F.R.D. 135, 147 (S.D.N.Y. 1997) (cited by Fuhr at Petition ¶ 65.)  Here, Deutsche Bank AG has submitted evidence that it cannot access the documents sought by the Petition (if they exist at all).  (Gambino Decl. ¶¶ 15-19.)  Deutsche Bank AG has also submitted evidence that DB Suisse is not under its "control."  (*Id.* ¶¶ 5-14.)  For example, DB Suisse has regular board meetings separate from Deutsche Bank AG (*id.* ¶ 11); DB Suisse observes separate corporate formalities from Deutsche Bank AG (*id.* ¶ 12); the assets of DB Suisse are not comingled with the assets of Deutsche Bank AG (*id.* ¶ 13); and DB Suisse and Deutsche Bank AG have separate offices (*id.* ¶ 14).

Fuhr has not made an adequate showing to overcome these assertions.  He only claims, without any support, that Deutsche Bank AG "ultimately control[s]" all of its subsidiaries; he does not even mention DB Suisse by name. (*See* Fuhr Decl. ¶ 72.)  Regarding the accessibility of the documents, Fuhr submits only conjecture that, "upon information and belief," employees in New York can access the documents with a "push of a button."  (Petition ¶ 48.)  As discussed at length above, that is simply untrue.

The Swiss Account documents are thus not in the possession, custody, or control of Deutsche Bank AG, and requests for those documents should be denied.

**B.     None Of The Discovery Sought By Fuhr Is Located In The U.S.**

Even if the Swiss Account documents were located at Deutsche Bank AG, they would be located abroad, along with the rest of the discovery sought in the Petition.  The discovery is thus outside of Section 1782's reach.

The "bulk of authority in this Circuit . . . holds that, for purposes of § 1782(a), a witness cannot be compelled to produce documents located outside of the United States." *In re Godfrey*, 526 F. Supp. 2d at 423-24 (collecting cases and finding discovery under Section 1782

was inappropriate because documents were located in Russia); *see also In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 n.5 (S.D.N.Y. 2006) ("§ 1782 does not authorize discovery of documents held abroad"); *In re Nieri*, No. Civ. A. M12-329, 2000 WL 60214, at *1 (S.D.N.Y. Jan. 24, 2000) (under § 1782, respondent "need only produce documents located within the United States").[13]

One of the first cases to address this issue was *In re Sarrio S.A.*, No. 9-372, 1995 WL 598988, at *2 (S.D.N.Y. Oct. 11, 1995) ("*Sarrio I*").  In that case, a Spanish corporation filed a Section 1782 application seeking the production of documents from Chase entities in New York for use in a Spanish proceeding.  *Id.* at *1.  Counsel for Chase, anticipating a subpoena requesting documents "related to a transaction carried out by Chase's European branches," requested that those documents be sent to him in the United States for review.  *Id.*  After the documents were provided to counsel for Chase in New York City, a subpoena was served, requesting, among other things, the documents sent from the European branches to counsel in the United States.  *Id.*  Determining that these documents were in the United States only for review by counsel, and were subject to the attorney-client privilege, the court considered the documents to be located in the Chase branches in Europe.  *Id.* at *3.

The court in *Sarrio I* examined Section 1782's legislative history and found that "the primary intent of the 1964 amendments to Section 1782 was 'to clarify and liberalize

---

[13]   The majority of courts in other jurisdictions agree.  *See, e.g.*, *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 52 (D.D.C. 2005) ("This body of case law . . . suggests that § 1782 is not properly used to seek documents held outside the United States as a general matter."); *Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1079-80 (9th Cir. 2002) (citing the Second Circuit's *Sarrio II* decision (discussed *infra*) as support for the view that "Congress intended § 1782 to reach only evidence located in the United States"); *In re Veiga*, 746 F. Supp. 2d 8, 25-26 (D.D.C. 2010) (acknowledging that a minority of courts have countenanced an exterritorial application of § 1782, but noting that, "[e]ven assuming there is no absolute bar to the discovery of documents located outside the United States, there is no doubt that courts may exercise their discretion to decline to order the production of documents abroad, and the Court will do so here").

existing U.S. procedures for assisting foreign and international tribunals and litigants in obtaining oral and documentary *evidence in the United States*.'"  *Id.* at *2 (quoting S. Rep. No. 1580, 88th Congress, 2nd Sess. (1964)) (emphasis added by court).

In reaching this conclusion, the court relied on the analysis of Professor Hans Smit—the author of the final version of Section 1782—who submitted a declaration in the *Sarrio I* case.  *Id.*  Professor Smit has explained the sound policy behind limiting Section 1782 to documents located within our borders:

> First, the evident purpose of Section 1782 is to make available to foreign and international tribunals and litigants evidence to be obtained in the United States.  Thus, a harmonious scheme is established: Evidence in Spain is obtained through proceedings in Spain, evidence in Great Britain is obtained through proceedings in Great Britain, and evidence in the United States is obtained through proceedings in the United States. . . .
>
> [Next,] if Section 1782 could be used for [non-U.S. discovery], American courts would become clearing houses for requests for information from courts and litigants all over the world in search of evidence to be obtained all over the world. . . . Federal courts and American business should not be saddled with such significant burdens in the absence of a legislative intent clearly expressed.
>
> [Finally,] if American courts were to assume the role of clearing houses for world-wide information gathering, conflicts with foreign countries would inevitably arise. . . .  It is one thing for an American court to insist that its procedures be used in aid of American litigation but quite another to impose them on actions brought in foreign courts.

Hans Smit, *American Assistance to Litigation in Foreign International Tribunals: § 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1, 10 (1998).

*Sarrio I* was appealed to the Second Circuit, which remanded the case for procedural reasons and did not reach the issue of Section 1782's geographic reach.  *Chase Manhattan Corp. v. Sarrio S.A. (In re Sarrio S.A.)*, 119 F.3d 143, 147 (2d Cir. 1997) ("<u>*Sarrio*</u>

*II*").  The court noted, however, that it "found no fault" with the District Court's order and that, "despite the statute's unrestrictive language, there is reason to think that Congress intended to reach only evidence located within the United States."  *Id.*[14]

The policy considerations espoused by Professor Smit apply in full force here.  As explained in detail above, none of the Swiss Account records or correspondence that Fuhr seeks would be located at or accessible by any Deutsche Bank AG branch or subsidiary located in the U.S.  (*See supra* at 8-12; *see also* Gambino Decl. ¶¶ 4-19.)  Thus, if the documents sought by Fuhr exist at all, they would necessarily have to be located in a foreign jurisdiction.

If Fuhr believes that these documents exist, and that they are relevant to the German Proceeding in which he is a party, he should seek production of those documents through a request to the German court overseeing the German Proceeding or through a request to a court in Switzerland, where Fuhr alleges that the documents are located.  There is no proper purpose in Fuhr coming to a United States Court seeking an order for the production of documents that—if they exist at all—are not located here.

## III.   THE PETITION SHOULD BE DENIED BECAUSE FUHR IS SEEKING TO CIRCUMVENT SWISS LAW.

Another discretionary factor that courts should consider when deciding a Section 1782 petition is "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel Corp.*,

---

[14]   Fuhr cites no case where a court permitted the use of Section 1782 to obtain documents located outside of the United States.  He claims, without any support, that "the legislative history and statutory language of Section 1782 appear to be unclear as to the issue of whether documents located outside the U.S. are subject to a Section 1782 application."  (Petition ¶ 48 n.1.)  He then cites a Supreme Court case for the generic proposition that "'the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity.  It demonstrates breadth.'"  (*Id.* (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 689 (2001).)  But, as explained in the *Sarrio I* and *Sarrio II* cases—and by Professor Smit, the drafter of the statute—Congress *has* anticipated this problem, and the legislative history supports the conclusion that the application of Section 1782 should be limited to the production of documents located within the U.S.

542 U.S. at 264-65.  This is exactly what Fuhr is doing here.  Fuhr has alleged that the

documents are located at DB Suisse in Geneva.  (*See, e.g.*, Petition ¶¶ 13, 56.)  Switzerland has

strict bank secrecy laws that impose criminal, civil, and administrative penalties for the improper

disclosure of information.  *See, e.g.*, *SEC v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323 (N.D.

Tex. 2011).  One of those laws, Article 47 of the Swiss Banking Act, provides that

> a banker's duty of confidentiality prohibits, among other things,
> the disclosure of the existence of the relationship between the bank
> and its customer, the type of accounts held, any transactions
> involving the bank, any information provided by the customer to
> the bank on personal or financial matters, and any additional
> disclosures that could facilitate the determination of the customer's
> identity or other confidential information about the customer.

*Id.* at 338 (internal quotation marks omitted).  "Violating Article 47 carries a penalty of up to

three years' incarceration or a 250,000 Swiss franc fine, and, except 'in very limited

circumstances' the decision to prosecute is nondiscretionary."  *Id.*  All of the documents

requested by Fuhr would fall under the purview of Article 47, which would prohibit the

disclosure of even the *existence* of a relationship between Marimón and/or Dr. Bäuml and DB

Suisse, let alone disclosure of the type of documents Fuhr is seeking, such as copies of bank

account opening and closing records, transfers, signature cards, and correspondence.[15]

The Court should deny the Petition based on this factor as well.[16]

---

[15]  If the Petition is granted, Deutsche Bank AG reserves the right to argue foreign privilege—of
Switzerland or another country—in opposition to any subpoena subsequently issued.

[16]  Denying the Petition would also support the principles of international comity.  *See In re Microsoft
Corp.*, 428 F. Supp. 2d at 195-96 ("a decision by this Court upholding Microsoft's discovery request
would contravene the purpose of § 1782 by pitting this Court against the [foreign tribunal], rather
than fostering cooperation between them, and would violate established principles of comity, under
which United States courts ordinarily refuse to review acts of foreign governments and defer to
proceedings taking place in foreign countries.").  To the best of Deutsche Bank AG's knowledge,
Fuhr has not sought these documents through the German or Swiss courts.  And his requests would
almost certainly be denied in Swiss courts based on Switzerland's strict banking secrecy laws, as
described above.

**IV.   THE PETITION SHOULD BE DENIED BECAUSE FUHR IS NOT SEEKING THE DISCOVERY "FOR USE" IN THE GERMAN PROCEEDING.**

As explained above, one statutory requirement of Section 1782 is that the discovery must be "for use" in the foreign proceeding.  Fuhr has not met this requirement because (i) the German Proceeding likely will be concluded before this Petition is even fully briefed; (ii) the discovery sought is not relevant to the German Proceeding; and (iii) the litigation history of the  "Wertheim heirs" suggests that Fuhr is seeking the discovery for use in frivolous lawsuits in the U.S.

*First*, courts have held that "[w]hen a foreign evidentiary proceeding has concluded and the foreign tribunal will no longer accept any evidence, the discovery sought cannot be 'for use' in the foreign proceeding."  *In re Imanagement Servcs. Ltd.*, 2005 WL 1959702, at *2; *see also Allied Ins. & Reinsurance Co. v. R. Esmerian, Inc. (In re Euromepa, S.A.)*, 154 F.3d 24, 29 (2d Cir. 1998) ("the district court was correct in dismissing the Petition as moot" when the proceeding in question had been completed).  A pending appeal or a litigant's desire to reopen the case will not alter this result, as "Section 1782 is designed to provide discovery in aid of foreign litigation, not to provide discovery to justify the reopening of already completed foreign litigation."  *In re Euromepa, S.A.*, 154 F.3d at 29.  The court explained in *Aventis Pharma v. Wyeth*, No. M-19-70, 2009 WL 3754191, at *1-2 (S.D.N.Y. Nov. 9, 2009) that:

> Put simply, this Court would not be providing "efficient means of assistance" to the litigants or the French Courts by allowing [the petitioner] to rush to a U.S Court on the eve of an appeal in hopes of obtaining discovery it could have requested in this same Court starting over five years ago.
>
> Further, as [the respondent] points out, the collection, review and production of [the petitioner's] expansive document requests can not happen quickly in the modern electronic age.  Even if the parties proceed with the utmost diligence and good faith to get the

production completed, there will likely be disagreement over the documents at issue which will add additional time for completion of the production.  This Court sees no reason why it should support [the petitioner] in seeking to compel [the respondent] to participate in a "fire drill" over documents when the French appeal is currently pending.  Since the timing of [the petitioner's] request places a burden on [the respondent] so great that they can not produce the requested documents in time for the French appeal, the documents requested are not available for use in the French proceedings.

These considerations apply here as well.  The German Judge is likely to issue a final decision on October 17, 2013, before the briefing on this Petition will be completed.  The documents thus cannot be "for use" in the German Proceeding.  Even if the German Judge issues only an interim decision, it is unlikely that any documents would be produced or a deposition scheduled before a final decision is rendered.  Fuhr still has to serve a subpoena, which Deutsche Bank AG would move to quash.  Even if Fuhr won that challenge, it would take time for Deutsche Bank AG to search for the documents and produce responsive documents (if any exist).

*Second*, Fuhr has not shown that the requested documents relate to his defenses in the German Proceeding.  As explained above, Marimón submitted evidence at the August 29 hearing that he never controlled or managed the estate of Dr. Bäuml and there was no relationship between the Swiss Account, Bäuml, and/or Marimón.  (Scheuerl Decl. ¶ 5.)  The Swiss Account document attached as Exhibit 1 to the Petition supports this; there is no indication that the account is in any way related to Dr. Bäuml or Marimón.

*Finally*, the Fuhr/Fagan/Gerdes history described above suggests strongly that the Petition is motivated, in whole or in part, by considerations that are unrelated to the defense of the German Proceeding.  Fuhr's demonstrated interest in filing lawsuits in the U.S. concerning the very topics of this Petition, and the very real possibility that the Petition is being used to obtain discovery for affirmative use in the U.S., militates against the exercise of the Court's

21

discretion to grant the Petition here.

## V.   THE PERSON(S) FROM WHOM THE TESTIMONY IS SOUGHT CANNOT BE FOUND IN THIS DISTRICT.

Fuhr is seeking "testimonial evidence from a representative of Deutsche Bank most knowledgeable about the subject matter of the relevant documents." (Petition at 1.) But Fuhr admits that he is seeking testimony about the Swiss Account (Fuhr Decl. ¶ 53), and no one at Deutsche Bank AG in New York has any knowledge related to that account, except what they may have read in Fuhr's own filings. (Gambino Decl. ¶ 20.) The case cited by Fuhr—*Edelman v. Taittinger*, 295 F.3d 171 (2d Cir. 2002)—held only that "regardless of any implicit limits on the location of documentary evidence . . . if a person is served with a subpoena" for testimonial evidence "*while physically present* in the district of the court that issued the discovery order, then for purposes of § 1782(a) he is 'found' in that district" and can be required to appear for a deposition. (*Id.* at 180 (emphasis added).) But Fuhr has not personally served a representative of DB Suisse while they were present in New York.[17] The Petition as it relates to testimonial evidence should thus be denied.

## CONCLUSION

For the foregoing reasons, Deutsche Bank AG respectfully requests that the Court (i) deny Fuhr's Petition and (ii) grant such other and further relief as the Court deems just and proper.

---

[17]   The *Edelman* court also discussed the *Sarrio I* and *Sarrio II* cases at length and did not challenge their conclusions. *Id.* at 176-77. The court only drew a distinction between documents and testimony, and explained that "[c]ommon sense makes us think that documents are maintained in a particular place, but the same is not true for individuals. What a person will testify to is located wherever that person is found." *Id.* at 177.

Dated:  October 11, 2013

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By:  /s/ Sander Bak

Sander Bak, Esq.
Nicole Vasquez Schmitt, Esq.
1 Chase Manhattan Plaza
New York, NY  10005
Tel.     (212) 530-5000
Fax      (212) 530-5219
E-mail: sbak@milbank.com
E-mail: nschmitt@milbank.com

Robert J. Liubicic, Esq.
601 South Figueroa Street – 30th Floor
Los Angeles, CA  90017
Tel.     (213) 892-4000
Fax      (213) 629-5063
E-mail: rliubicic@milbank.com

*Counsel for Deutsche Bank AG*